WARD, Judge.
This is an action for personal injuries arising out of a traffic accident that occurred in the City of New Orleans. Thomas Wright, Jr., filed suit against New Orleans Public Service Inc. (NOPSI) and Eloise O’Neal (O’Neal) seeking to recover damages for injuries he received when a taxicab operated by Wright and a bus operated by O’Neal were involved in a collision. NOP-SI, the owner of the bus, and O’Neal, NOP-SI’s employee, answered Wright’s suit and denied liability for those injuries. There was a trial on the merits, and the trial judge rendered a judgment in favor of both defendants, NOPSI and O’Neal. One week after the judgment, Wright filed a motion for a new trial, the motion was granted, and the judgment in favor of defendants was vacated. In a second trial, two witnesses who had not been present for the first trial testified for Wright. The trial judge then rendered judgment in favor of Wright, awarding damages to him for his injuries. NOPSI now appeals from that judgment.
In this appeal, NOPSI contends that the trial judge erred (1) when he granted a new trial and (2) when he rendered the second judgment in favor of Wright.
As to the first contention, the new trial was granted because Wright had located two witnesses he had unsuccessfully tried to produce for the first trial. In preparation for the first trial, Wright had subpoenaed these two witnesses at the address given by them to the New Orleans police officers investigating the accident, but they did not receive these subpoenas because one had moved and the other was in the hospital. NOPSI argues that Wright, who had more than two years to prepare for trial, could have produced the witnesses for the first trial if he had used due diligence and that it was error for the trial judge to grant a new trial because Wright did not prove he had made a diligent effort. On the other hand, Wright contends that the granting of a new trial was within the sound discretion of the trial judge.
In motions for a new trial, the Code of Civil Procedure distinguishes two situations. In one, the trial judge is required to grant a new trial. It is error if he does not “where the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.” LSA-C.C.P. Art. 1972. In the oth *882 er, granting or denying a new trial is largely within the sound discretion of the trial judge, and “a new trial may be granted in any case if there is good ground therefor.” LSA-C.C.P. Art. 1973. Therefore, when there has been a diligent effort to produce the newly discovered witnesses, it is error not to grant the motion. However, even if a diligent effort is not shown, it nevertheless remains within the trial judge’s sound discretion to grant the motion if he believes there are good grounds to support it. Of course, that discretion may be abused, and its exercise is subject to review, but unless there is a clear abuse, there is no error. Simas v. Hicks, 381 So.2d 949 (La.App. 3rd Cir. 1980); Strobel v. Schlegel, 145 So.2d 664 (La.App. 4th Cir. 1962). Hence the question here is: did the trial judge abuse his discretion by granting the motion without good grounds? Under the circumstances of this case, our answer is that there was no abuse of discretion.
To consider NOPSI’s second contention, we must review the testimony given in both trials since the new trial was granted for the limited purpose of permitting Wright’s new-found witnesses to supplement the testimony of the first trial. NOPSI here contends that even if the two new witnesses’ testimony is admissible, when it is considered with the testimony given in the first trial, the trial judge’s original decision was correct: NOPSI is not liable because Wright was negligent.
The testimony given during both trials indicates that at five o’clock on the afternoon of October 30,1978, Wright picked up two passengers near the intersection of North Rampart and Canal Streets. Although Wright testified that he stopped only to pick up the passengers, he admitted he brought the cab to a stop in a “no parking” zone on North Rampart Street, which was marked off with yellow lines, behind an area designated as a taxi zone. Although it was an important question of fact, conflicting testimony was given as to whether the taxicab zone was occupied by other cabs. Nevertheless, Wright testified that after he had stopped, he had shifted to the parking gear and the passengers had entered his cab when the NOPSI bus, in the process of making a right-hand turn from Canal and onto Rampart, hit the rear of his cab. Although this part of Wright’s testimony was corroborated by the testimony of the two passengers who were absent during the first trial, they contradicted other more important parts of his testimony. They testified that the cab was parked, not merely stopped, in the “no parking” zone, within fifteen feet of the corner and that Wright was standing outside the cab waiting for a fare when they first saw him. Whichever testimony is believed, that of Wright or of his witnesses, it established that Wright had stopped or parked in the prohibited zone within fifteen feet of the corner of North Rampart and Canal.
For the defense, the bus driver, Eloise O’Neal, testified that while she was making a right-hand turn, the taxicab backed up and hit the bus in the right rear just behind the door. O’Neal’s testimony was corroborated by a passenger on the bus.
In his first judgment, the trial court noted that Wright had stopped his cab in a “no parking” zone and “placed his taxicab in a place .that it should not have been.” He also found that Wright had not proven by a preponderance of the evidence that O’Neal was negligent because “(i)f there were no cabs at the stand, it is reasonable to assume that nothing prevented plaintiff from continuing a few feet ahead so as to avoid the ‘no parking’ area. If there were taxis occupying that space the defendant (bus) driver’s version of how the accident occurred becomes both logical and believable.” In other words, Wright could not recover because he did not prove the cab was hit by the bus and, more importantly, Wright could not recover because he was guilty of contributory negligence.
In his second judgment, rendered after the new trial, the trial judge held that because of the testimony of the new-found witnesses, Wright had carried the burden of proof to show that O’Neal was negligent. He found those witnesses proved that “the taxicab did not move prior to the accident,” *883 and therefore, the bus driven by O’Neal must have struck the cab. He rendered his second judgment in favor of Wright and against NOPSI and O’Neal.
However, although the new testimony proved O’Neal was negligent, it did not touch upon the trial judge’s finding that Wright was contributorily negligent. It not only failed to negate his original finding of Wright’s negligence, it reinforced it because it corroborated the evidence that Wright had parked in a “no parking” zone and added that he was out of his cab when the passengers first saw him.
We hold that the original finding was correct: Wright was negligent, and his negligence was a cause of the accident. We base our conclusion that Wright was negligent on the trial judge’s original finding of fact: Wright had parked in a “no parking” zone which was clearly a violation of several city ordinances.[1] One of these ordinances prohibits stopping or parking a vehicle within twenty feet of a crosswalk at an intersection; another prohibits parking a vehicle in a “no parking” zone; and another specifically prohibits stopping or parking a vehicle on Rampart Street, at the place of the accident, during the time when the accident occurred.
We believe violations of city ordinances are analogous to violations of statute, and “(w)hile statutory violations are not in and of themselves definitive of civil liability, they may be guidelines for the court in determining standards of negligence by which civil liability is determined.” Smolinski v. Taulli, 276 So.2d 286 (La.1978).
So, although violation of an ordinance is not conclusive evidence of negligence, it must be considered. Before determining that the violation is negligence, it must be proven that “... the prohibition in the statute is designed to protect from the harm or damage which ensues from its violation .... whether (the violation) was a substantial factor without which the accident would not have occurred — that is, whether it had some direct relationship to the accident.” Laird v. Travelers Insurance Company, 263 La. 199, 267 So.2d 714 (1972).
We have concluded that protection from this kind of accident was contemplated by an ordinance establishing a “no parking” zone. The “no parking” zone at an intersection is obviously to provide for a free flow of traffic and to give turning automobiles, trucks and buses room to complete a turn. This is all the more true at an intersection in a downtown area where there is a heavy flow of vehicular and pedestrian traffic. Additionally, zones are designated for taxicabs to provide a place for them to park and wait for passengers and to give boarding passengers the opportunity to enter and leave cabs safely.
A party claiming contributory negligence has the burden of proving that the conduct on the part of the plaintiff falls below the standard of conduct of a reasonable man under the circumstances. Smolin-ski, supra. We believe that NOPSI has met this burden by proving that Wright parked in a “no parking” zone, within fifteen feet of an intersection, creating a foreseeable hazard for turning vehicles and a hazard for his boarding passengers.
In summary, Wright created a hazard that contributed to the cause of the accident. It was foreseeable, and Wright was guilty of contributory negligence. His contributory negligence bars his recovery for his injuries. Therefore, we reverse the judgment in favor of Wright and enter judgment in favor of NOPSI. Costs of the trial and this appeal are to be paid by plaintiff, Thomas Wright, Jr.

. Code of the City of New Orleans, Section 38-239; Section 38-281; Section 38-282.