435 So.2d 513 (1983)
Michael TEBBE, individually and as administrator of the estate of the minor children, Jane Tebbe, Michael Tebbe, Jr., Taylor Tebbe, Charlotte Tebbe, and Charlene Tebbe, and Sue Tebbe, Individually
v.
Frank AVEGNO, Jr. and his insurer, Allstate Insurance Company and the Travelers Insurance Company.
No. CA-0557.
Court of Appeal of Louisiana, Fourth Circuit.
June 28, 1983.
Rehearing Denied August 23, 1983.
*514 Robert F. Fleming, Jr., Glorioso & Fleming, New Orleans, for plaintiffs-appellants.
E. Ross Buckley, Jr., Robert H. Cooper, Blue, Williams & Buckley, Metairie, for defendants-appellees, Frank Avegno and Allstate Ins. Co.
James F. Ryan, Law Offices of James J. Morse, New Orleans, for defendant-appellee The Travelers Ins. Co.
Before SCHOTT, AUGUSTINE and CIACCIO, JJ.
CIACCIO, Judge.
The intersection of Filmore Avenue and Memphis Street in New Orleans is controlled by stop signs directed toward the traffic on Memphis Street, giving the traffic travelling on Filmore Avenue the right-of-way. On May 27, 1979, Sue Tebbe was driving her family car on Filmore Avenue with her husband and their five children as passengers. Frank Avegno, Jr. was driving his car on Memphis Street toward Filmore Avenue. The two automobiles collided at the intersection of Filmore Avenue and Memphis Street, giving rise to this lawsuit.
Sue Tebbe, individually, and Michael Tebbe, individually and on behalf of their five minor children, sued Frank Avegno, Jr. and his insurer, Allstate Insurance Company. Also made a defendant was the Travelers Insurance Company, the uninsured motorist carrier for the plaintiffs.
A trial was held on May 18, 1981, and the jury returned a verdict in favor of the defendants. A motion for a new trial was filed, and was granted on August 27, 1981. A new trial was held on March 10, 1982, and the jury returned a general verdict in favor of the plaintiffs awarding $9,000.00 to Michael Tebbe for payment of medical expenses and $20,000.00 to Sue Tebbe as general damages. No general damages were awarded in favor of Michael Tebbe or any of the five children. The trial judge made the verdict of the jury the judgment of the court and the plaintiffs have appealed. The plaintiffs specified as error only that the jury award to Sue Tebbe was inadequate and a clear abuse of the trier-of-fact's "much discretion" in awarding damages. Defendants, Frank Avegno, Jr. and Allstate Insurance Company, have answered the appeal raising the following issues: (1) That the trial court abused its discretion in granting *515 plaintiffs a new trial. (2) That plaintiffs' appeal should be dismissed because plaintiffs have voluntarily acquiesced in the judgment by accepting payment of the judgment and authorizing the Clerk of Court to mark the docket satisfied. (3) That the trial court record does not reveal that the jury abused its discretion concerning the amount of damages awarded Sue Tebbe.
A trial court has virtually unlimited discretion to order a new trial, even on its own motion, where it is convinced there is ground therefor. La.C.C.P. art. 1971-1973; Wright v. O'Neal, 414 So.2d 880 (La.App. 4th Cir.1982); Deliberto v. Deliberto, 400 So.2d 1096 (La.App. 1st Cir.1981). Unless there is clear abuse of the trial court's discretion, there is no error. Wright v. O'Neal, supra; Deliberto v. Deliberto, supra; Simas v. Hicks, 381 So.2d 949 (La.App. 3d Cir.1980).
The trial court specifically found, after a contradictory hearing, that there was "good ground for" granting a new trial. Since defendants did not, as was their duty, provide either a transcript or narrative of the contradictory hearing, we can only follow the presumption that the trial court's judgment was supported by competent evidence and should be affirmed. Deliberto v. Deliberto, supra; De Laneuville v. Duplessis, 385 So.2d 385 (La.App. 1st Cir.1980). Under the circumstances of this case, we do not find a clear abuse of the trial court's discretion. The action of the trial court, therefore, will not be disturbed.
The second argument of defendants-appellees is that plaintiffs' appeal should be dismissed. In factual support of this argument, appellees attached to their brief a document entitled "Receipt and Satisfaction of Judgment" which was executed by plaintiffs, Michael and Sue Tebbe, and witnessed by their attorney. Except for this document, the record on appeal contains no evidence in connection with this issue.
Ordinarily, appellate courts may not receive new evidence. There is an exception to this rule where facts subsequent to trial are not disputed and are admitted. Pierce v. Board of Supervisors of Louisiana State University, 392 So.2d 460 (La.App. 1st Cir.1980), and cases cited therein. In this case, there has been no joint stipulation of facts. We may not consider, therefore, any new evidence, such as the document attached to appellees' brief or the comments of counsel during oral argument. Consequently, appellees' plea to dismiss the appeal is without any evidentiary support.
Appellees cite Jack v. Lambert's in Metairie, Inc., 348 So.2d 102 (La.App. 4th Cir., 1977), in support of their request for dismissal. In Jack, the appellee filed a motion to dismiss to which no opposition was filed. In these proceedings, appellees did not file a motion to dismiss but raised the issue in answer to the appeal and argued the issue in their brief. Accordingly, we distinguish the Jack case. If a motion to dismiss had been filed, this Court may have chosen to remand to the trial court so that evidence could be taken concerning the intention of the parties. Forfeiture of a party's right to an appeal through acquiescence should only be decreed when the party's intention to acquiesce and abandon this right is clearly demonstrated. CCH, Inc. v. Heard, 410 So.2d 1283 (La.App. 3d Cir. 1982); Succession of Marcel, 387 So.2d 1363 (La.App. 1st Cir.1980).
Under the circumstances of this case, we will not dismiss plaintiffs' appeal. Furthermore, resolution of this issue becomes moot because of our ultimate decision to affirm the judgment.
The final issue we must address concerns the adequacy of the award in favor of Sue Tebbe, i.e., $20,000 for general damages.
The automobile collision occurred on May 27, 1979. On June 5, 1979, Mrs. Tebbe was examined by Dr. Aiken who found she had tenderness and spasm in some of the muscles in the back of the neck on the right side, limitation of motion in the neck and a positive compression test of the neck. At this time Mrs. Tebbe complained primarily of pain in her neck. On June 7, 1979, she began having low back pain. Dr. Aiken *516 diagnosed Mrs. Tebbe as having an acute sprain of her neck with pain radiating down the right arm and an acute sprain of the low back. He prescribed medication for pain and muscle relaxers, set up a regimen of physical therapy, told her to place a board under her mattress, prescribed a cervical collar and corset brace and urged her to use heat and massage as much as possible at home. On June 18, 1979, Dr. Aiken first noticed numbness on the outer aspect of her right arm which he testified indicated that there was a pinched nerve in her neck.
By July 12, 1979, Dr. Aiken did not think Mrs. Tebbe was improving and referred her to Dr. Llewellyn, a neurosurgeon. Dr. Llewellyn examined and diagnosed Mrs. Tebbe as having a muscle and ligament strain in her neck and was concerned that she may also have an injury to a joint or disc in her neck. He advised her to continue conservative treatment.
Mrs. Tebbe continued to visit Dr. Aiken. Dr. Aiken felt that by September her low back pain was better although there was still evidence of sciatic nerve irritation. By October, Dr. Aiken advised Mrs. Tebbe that she should consider surgery for her neck problems.
In November of 1979, Mrs. Tebbe again saw Dr. Llewellyn who advised her to consider hospital forms of treatment. Mrs. Tebbe avoided hospital treatment because of the need for her to care for her five children who were all young, the youngest, twins, being only 10 months old at the time of the accident, and because of her family financial situation. Dr. Llewellyn did not see Mrs. Tebbe again until January of 1981, when he found her condition generally unchanged. He was able to convince her to enter the hospital in February of 1981.
While Mrs. Tebbe was hospitalized, Dr. Llewellyn had her undergo a myelogram which, in his opinion, revealed a disc rupture at the C-5 and C-6 level. He told her that she had reached her maximum level of improvement unless she would submit to surgery following which she could hope for improvement to become 80%-85% comfortable in her day to day activities. Dr. Llewellyn did not see Mrs. Tebbe following this hospitalization.
In September of 1981, Mrs. Tebbe visited Dr. Vogel, a neurosurgeon. On examination he noted limitation of motion of the neck, muscle spasm on the right side, a diminution of the right grip to 60 versus the left of 140 in a right handed patient. There was also numbness of the first and second fingers of the right hand and the reflexes were unequal. Dr. Vogel diagnosed Mrs. Tebbe as having a herniated cervical disc at the C-4, C-5 or C-6 level.
Dr. Vogel hospitalized Mrs. Tebbe in October of 1981. He examined the records and x-rays of her previously performed myelogram. His opinion was that there was evidence of abnormality at C-5/C-6 level. Dr. Vogel performed an anterior cervical fusion and testified that prior to removing the damaged disc he was able to observe its abnormal condition.
Six weeks following the surgery Dr. Vogel examined Mrs. Tebbe at which time she complained of moderate neck pain, and the doctor found limitation of motion in all directions and mild muscle spasms in the right neck region. In January of 1982, Dr. Vogel saw Mrs. Tebbe for the last time and discharged her, feeling that she would always have a ten to twenty percent disability of her neck or spine. He advised her to continue conservative care and that she would reach maximum improvement approximately a year following surgery.
Mrs. Tebbe was 33 years old at the time of the accident. She testified that she was in pain immediately after the accident. She described the physical pain and mental anguish she suffered from her injury. At trial, she indicated that she still experienced aching and a loss of strength in her right hand.
Mr. Tebbe testified that his wife was unable to perform her normal household chores or care for her children the way she had prior to the accident. He told of how his mother and her mother would take turns watching the children but with five children it was difficult. He testified that *517 the total medical expenses were approximately $9,000.00.
Defendants argue that the surgery undergone by Mrs. Tebbe was either unnecessary or not related to the accident. Evidence was presented that Mrs. Tebbe had injured her neck in a previous automobile accident some 12 years earlier. Dr. Levy, a neurosurgeon, testifying for defendants, stated that his review of the test results furnished by the myelogram revealed no defect or injury. Dr. Levy further stated that his examination of Mrs. Tebbe revealed no neurological reason for her subjective complaints. Defendants also point to Dr. DeMouy's radiological report on the myelogram which notes a minimal asymmetry of the spinal canal at the C5-6 level. Dr. Sanders also reported on the myelogram and stated that the shadow of the cervical cord is normal. Defendants conclude that in the light of this evidence the award to Mrs. Tebbe was adequate. All of the above evidence was presented to the jury.
The trier-of-fact is obliged to assess the credibility of experts who testify at trial, as well as that of lay witnesses, to determine the most credible and realistic evidence. After weighing and evaluating all of the medical evidence, and the lay testimony, relating to the injuries sustained by a plaintiff, the trier-of-fact may accept or reject the opinion expressed by any medical expert, depending upon how he is impressed with the qualifications and the testimony of that expert. The fact finder's determination based upon the credibility of the witnesses will not be disturbed unless found to be clearly erroneous. Guidry v. Davis, 382 So.2d 250 (La.App. 3d Cir.1980); Lewis v. Orleans Parish School Board, 371 So.2d 328 (La.App. 4th Cir.1979). Based upon its evaluation of the evidence, the jury apparently found a connection between the May, 1979, accident and at least some of Mrs. Tebbe's complaints. Our review of the record does not indicate this conclusion to be clearly erroneous.
The law accords the trier-of-fact "much discretion" in awarding damages. La.C.C. art. 1934(3). We will not disturb the award absent an abuse of that discretion. Wilson v. Magee, 367 So.2d 314 (La. 1979). We have carefully reviewed the entire record. We have also studied the awards which have been granted in other similar cases. We find no abuse of discretion, therefore, we will not disturb the award.
Accordingly, the judgment is affirmed.
All costs of this appeal are to be paid by appellants.
AFFIRMED.