WILLIAMS, Judge.
This is an appeal from a judgment rendered after a new trial reducing defendant’s alimony from $775.00 per month to $300.00 per month.
Defendant Shirley Carlone and plaintiff Dominic Carlone were divorced in June, 1974, after almost twenty years of marriage. Plaintiff subsequently married his present wife, Faye Carlone. On April 3, 1981, defendant filed rules for plaintiff to be held in contempt of court, to make past due alimony executory, for attorney’s fees and for an increase in alimony. On May 15, 1981, a judgment of separate property was entered into between plaintiff and his present wife. On August 5, 1981, judgment was rendered dismissing defendant’s rules for contempt, arrearages, and attor *1276 ney’s fees, but increasing her alimony to $775.00 per month. Plaintiff was granted a new trial for the restricted purpose of allowing introduction of his and his present wife’s judgment of separate property and of an accountant’s testimony concerning plaintiff’s income. Judgment on February 24,' 1982, reduced alimony to $300.00 per month. Defendant applied for a new trial, which was granted. On May 10, 1982, plaintiff’s present wife, Faye Carlone, filed a petition for separation from bed and board. On June 30, 1982, the granting of defendant’s application for a new trial was withdrawn. Defendant filed a petition for appeal to this court on July 13, 1983, alleging that the trial court erred: (1) in granting plaintiff’s unverified motion for a new trial; (2) in admitting into evidence at the new trial the separate property judgment and an accountant's testimony; and (3) in reducing alimony from $775.00 alimony per month to $300.00 per month after a new trial.
JURISDICTION
Plaintiff contends that only one new trial is permitted, and that the delay period for appeal, therefore, began on the date of the judgment of the first new trial and had expired before defendant filed her petition for appeal.
Defendant bases her contention on the fact that the statutory provisions for new trial refer to it in the singular and on the lack of provisions for the filing of new trials from judgments granted on new trials. See La.C.C.P. arts. 1971-1979.
Without a more explicit indication of such intent, the statutes use of the wording “a new trial” cannot be read to prohibit more than one new trial. Article 14 of the Louisiana Civil Code states that “[t]he words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words.” The Civil Code’s definitional statute goes further in stating that “[t]he singular is often employed to designate several persons or things...” La.C.C. art. 3556(2).
In fact, Article 1971 provides that a new trial may be granted to all of the parties, which would suggest that more than one new trial could be granted. In any case, since there is no explicit prohibition of a second new trial and there are no provisions in the law concerning the matter, the decision to grant more than one new trial must rest with the trial court judge. The delay period for taking an appeal does not begin to run until the court’s refusal to grant a timely application, or the date of mailing of notice of the court’s refusal if required, for the second trial just as for the first. La.C.C.P. arts. 2087(2) and (3), and 2123(2) and (3); Jones v. Jones, 393 So.2d 281 (La.App. 1st Cir.1980); Donaldson v. Donaldson, 389 So.2d 1375 (La.App. 3d Cir.) writ den. 394 So.2d 617 (1980).
Defendant’s appeal, filed thirteen days after the judgment denying her new trial, was timely, and this court has jurisdiction.
VERIFICATION OF MOTION FOR NEW TRIAL
Defendant contends that it was error for the trial court to grant the plaintiff’s motion for a new trial because the allegations of fact therein were not verified by affidavit.
Louisiana Code of Civil Procedure Article 1975 provides:
A motion for a new trial shall set forth the grounds upon which it is based. When the motion is based on Article 1972(2) and (3), the allegations of fact therein shall be verified by the affidavit of the applicant.
Article 1972 provides:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) Where the judgment appears clearly contrary to the law and the evidence;
(2) Where the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during trial; or
(3) In jury cases, as provided in Article • 1814.
*1277 Defendant’s argument presumes that the new trial granted plaintiff was based upon Article 1972(2). In addition to the peremptory grounds listed under that article, however, there are discretionary grounds in Article 1973, which provide that “[a] new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law.” Article 1975 does not require an affidavit when a new trial is based upon such discretionary grounds. As plaintiff applied for and was granted his new trial based on these discretionary grounds, defendant’s first argument is without merit.
INTRODUCTION OP ADDITIONAL EVIDENCE AT NEW TRIAL
Defendant contends that it was also error for the trial court to grant the plaintiff’s motion for a new trial because plaintiff sought to introduce in the new trial evidence which was available to him at the original trial but which he failed to offer at that time.
This argument is also based on the erroneous assumption that the new trial was granted based upon Article 1972(2).
To be granted a new trial of right, Article 1972(2) requires the party seeking a new trial to show that he could not have obtained the evidence earlier.
Even if a diligent effort to produce newly discovered evidence is not shown, Article 1973 authorizes the trial judge, within his sound discretion, to grant a motion for new trial if he believes there are good grounds to support it. Wright v. O’Neal, 414 So.2d 880 (La.App. 4th Cir. 1982) reversed on other grounds 427 So.2d 852 (1983).
The trial court rendered the August 5, 1981 judgment increasing alimony based on evidence presented as to the salary and benefits received from the family enterprises employing plaintiff and on the lifestyle plaintiff shared with his present wife. The trial judge determined in his discretion that additional testimony presented by an accountant, and the judgment of separation of property between plaintiff and his present wife, should be considered in fixing plaintiff’s alimony obligation.
Where the motion for a new trial is based upon the discretionary grounds of Article 1973, the appellate courts will not interfere unless there has been a clear abuse of this discretion. Strobel v. Schlegel, 145 So.2d 664 (La.App. 4th Cir.1962); Simas v. Hicks, 381 So.2d 949 (La.App. 3d Cir.1980); State Board of Education v. Anthony, 289 So.2d 279 (La.App. 1st Cir.1973) writ den. 292 So.2d 246 (1974). We cannot conclude that there has been such abuse here. This argument is without merit.
REDUCTION IN ALIMONY
Defendant contends that it was error for the trial court to reduce its original judgment of $775.00 per month permanent alimony to $300.00 per month after the new trial.
Plaintiff’s testimony at the original trial established the following facts. Plaintiff and his brother are the sole shareholders in Accent Jewelry Company. Plaintiff purchased $60,000.00 of stock in Accent Annex, Inc. Plaintiff received many benefits from these two corporations. Accent Jewelry paid plaintiff’s weekly salary and provided him with a 1977 Cadillac, gasoline and maintenance included. Plaintiff’s son used the company’s work van. The company owned 10 season tickets to the New Orleans Saints games. Accent Annex, Inc. paid for plaintiff and his present wife’s recent trip to Hong Kong for nine days. Plaintiff had expense accounts which he used whenever “on business” for either corporation. His expenses were also covered when doing work for the Lions Club. Plaintiff testified that the trip he and his present wife had recently taken to the Virgin Islands had been paid for by friends. He had use of a private pleasure plane, although he insisted that he did not have an interest in it, but had only paid for its repairs. The Metairie home with swimming pool that he and his present wife purchased had cost them $77,500.00 in 1976.
Defendant Shirley Carlone was 55 in 1981. She had a tenth-grade education and *1278 had not worked for 25 or 30 years. She was severely limited by a number of health problems and had been told not to work by her doctor. She testified that she owned a 1972 Buick and received only $165.00 a month in addition to alimony.
On April 3, 1981, defendant filed a rule for increase in alimony. In the weeks following, plaintiff made several changes in his financial position. He drew up a contract to separate the community between himself and his present wife. He put their home into her name, testifying that this was because she had put up the $15,000.00 down payment, and he felt the house “really belonged to her.” Plaintiff also suffered a reduction in the wages paid him by Accent Jewelry Co., going from $275.00 to $150.00 a week, and a change in his title from manager to “consultant/advisor." Plaintiff testified that this was not his decision, but the decision of his brother, the only other owner of the corporation. Plaintiffs present wife’s wages were accordingly raised, and she was named manager. Plaintiff testified that this was because he and his brother realized she “was doing all the work” anyway.
Plaintiff alleged that he was in a “tight” financial condition, and $127,000.00 in debt. He testified that he borrowed $100,000.00 from a shareholder in Accent Annex, Inc. He put $60,000.00 of that into the Accent Annex shares which he transferred, without consideration, to his wife, and the other $40,000.00 into Accent Jewelry Co., the corporation he and his brother owned. Plaintiff testified he borrowed $11,000.00 from his present wife’s mother and also put that into Accent Jewelry to help his wife. Another $10,000.00 borrowed from plaintiff’s mother-in-law was given to his son for the down payment on a house.
The trial court judge seemed unconvinced by plaintiff’s claim of having only the $150.00 a week wages paid him by Accent Jewelry to live on:
“Inasfar as his testimony is concerned and how much money he can pay for permanent alimony he doesn’t particularly impress me at all with the fact that he can only pay either $200.00 or something less. I think from reading his statement here and seeing the total amount that he says it costs him to live of $1,538.20 and he only takes home $141.16, I think that he has the ability to pay ... [a] total of $775.00.”
(Transcript at 96, Vol. II).
The original trial was held on August 4, 1981. The new trial was held December 9, 1981. At the new trial on accountant testified for plaintiff. He had examined only the payroll tax returns and payroll check stubs of Accent Jewelry, Inc. over the preceding year. He had never prepared plaintiff’s income tax returns. He testified that the payroll indicated plaintiff had been receiving $150.00 a week since sometime in April. The accountant brought no copies of these records with him to court. When asked if plaintiff received income other than the $150.00, the accountant could only testify, “Not that I know of.”
At the original trial plaintiff had testified to an income from his and his brother’s corporation, Accent Jewelry Co., of $150.00 a week. The court was also aware of the separation of property judgment at the original trial, as it seemed to be the specific foundation for plaintiff’s subsequent transfers to his wife after defendant ruled for an increase in alimony. The trial court discredited plaintiff’s contentions in granting defendant the increase she asked for rather than decreasing the alimony payments as plaintiff had requested.
In order to change the alimony award made in a consent decree, the party seeking the alteration must show a change in circumstances. Bernhardt v. Bernhardt, 283 So.2d 226 (La.1973).
The evidence presented at the new trial contained nothing that the trial court did not consider upon original hearing when it had apparently decided plaintiff was merely painting a contrived scenario of economic hardship. We agree with the original decision of the trial court in its determination that the evidence and testimony presented by plaintiff as to his altered financial status strained credibility. We hold that the evidence presented at the new trial *1279 was insufficient to merit a change from the judgment at the original trial. Plaintiff, of course, is free to return to the trial court to file a rule for reduction of alimony whenever he feels circumstances have changed sufficiently to so merit.
For the foregoing reasons, the decision of the trial court reducing alimony to $300.00 per month is reversed and the original judgment granting defendant $775.00 per month is reinstated.
REVERSED.