CHEHARDY, Judge.
This is a child custody case. The trial judge awarded the custody of two-and-one-half-year-old Corey Michael Boudreaux to his father. The child’s mother, Mary Haas Boudreaux, has appealed.
This appeal is a culmination of legal proceedings which began on May 7, 1982 when Mr. Boudreaux filed a petition for separation based on the ground of abandonment and prayed for custody of his son. When no answer was filed, a default judgment was rendered in favor of the husband granting the separation and awarding him custody. The wife then filed a motion for a new trial, which, after hearing thereon, was denied.
In 1983 Mrs. Boudreaux filed a suit for divorce and a change of custody, and later filed rules for contempt and visitation. The parties then entered into a consent judgment whereby the father retained custody while the mother was awarded visitation one day per week, and every other weekend.
Following trial on the merits of the divorce action, concurrent with custody and support rules, judgment of divorce was rendered in favor of the wife. Custody was continued with the husband subject to the visitation agreement previously made by the parties in the consent judgment.
In this court, appellant contends the trial court erred in awarding custody of the minor to his father and that the best interest of the child would be served if custody was granted to the mother.
In support of her position appellant relies principally on the testimony of Dr. Klebert Jones, a child psychiatrist. Jones evaluated the child at Mrs. Boudreaux’s request on January 10 and May 17, 1983. At the initial meeting a developmental history of the child was obtained, along with information from the mother about the separation and divorce and its effect upon the child. The session lasted one and one-half hours. During this period the doctor saw the child alone for about 25 to 30 minutes.
*1239 When the child was evaluated on May 17 during a one-hour, 15-minute session, the doctor noted a change in his behavior which he attributed to the fact that the mother had not been permitted to see the child in February and had to seek visitation rights through the court.
The mother also told the doctor the child’s sleeping and eating habits had changed, that he was more aggressive, and that when driven past his father’s house the child starts to cry, because he did not want to go there.
Based upon information relative to custodial arrangements, visitation and unsettling events related to him solely by the mother, with no other independent or corroborating information supplied by anyone else, and without any input by the custodial parent, who was unaware his child was being evaluated, the doctor concluded the change in visitation had resulted in Corey desperately missing his mother, and that the best interest of the child would be served if the mother had primary custody.
The doctor found Corey was more anxious, less verbal, and displayed a greater visable need to be in close physical proximity to his mother; he was less interactive with him (the doctor), and did not maintain direct eye contact as he had on the initial visit.
Dr. Jones felt Corey was being adequately cared for physically by the father and that the father’s input must be good in many ways, but the panic reaction the child exhibits when returned to the father’s residence by the mother resembles a struggle and casts a potential cloud over the child in terms of his relationship to women in later life.
Mrs. Boudreaux, a nurse, testified that when she left her husband in 1982 she took the child with her. She works varying shifts and her husband, a railroad clerk, also works shifts. Their arrangement was to share the responsibility for Corey depending on what shift either parent worked.
When the mother had the day shift (7 a.m. to 3 p.m.) she delivered Corey to the father at 5:30 a.m. He would take the child to nursery school mid-morning, and she would pick him up at nursery school about 3:30 p.m. Whenever there was a problem her mother would help.
In February her husband refused to continue the routine and she had to go to court to set visitation rights. However prior thereto she sought Dr. Jones’ help, because of her worry about how Corey’s behavior had been affected by the separation.
Since February 1983 she finds the child’s behavior has changed dramatically. He is urinating on himself, has regressed to the bottle and refuses to go out of her sight, clinging to her when she tries to return him to his father.
After the separation she and the child lived with her mother and father for a short time, and then lived with her brother and sister-in-law until she secured an apartment. Mrs. Boudreaux earns $2,000 per month and can provide for the child.
Testifying on behalf of appellee were Boudreaux himself, Mrs. Debbie Hebert, his baby-sitter, and Mrs. Catherine Haas, the wife of Mrs. Boudreaux’s brother.
Boudreaux testified that he rents a very clean two-bedroom house where Corey has his own room. There is a nice back yard to play in and a driveway along the side of the house where the child can ride a bike. Photographs introduced in evidence depict the attractive home.
He claims to have a very good relationship to the child and considers the boy his main concern and responsibility. His mother is his principal baby-sitter, assisted by Mrs. Hebert, the wife of his best friend.
Boudreaux would be willing to participate in any form of family or group therapy with the child if it was determined this was in the child’s best interest, but he was never informed about the psychiatric evaluation and has no reason to believe the child needs psychiatric treatment.
It is clear Mr. and Mrs. Boudreaux have an acrimonious relationship with each oth *1240 er. Prior to the visitation agreement, although he had custody, she refused to return the child and informed him the only way to get his child back was to come with a police officer because she did not want him on the property. Under those circumstances he returned with an officer.
The officer, who was called as a witness for Mrs. Boudreaux, confirmed the husband’s request. He stated the child was asleep when he arrived and cried when he had to leave the mother’s apartment. (The father denies the child cried.)
Boudreaux initially permitted his wife to see Corey anytime she wanted to, but cut down on the visitation because of harassment from her and her mother.
He described incidents where Mrs. Bou-dreaux brought the child back accompanied by a live rabbit or a dog. Corey cried because he could not keep the pets. The father feels these things are done deliberately to upset the child and manipulate him. He described other scenes where his former wife has refused to leave his home when her visit is terminated.
Mrs. Hebert testified to telephone harassment by appellant and told of a personal visit where the child’s mother knocked on her door and cursed long enough and loud enough to disturb the neighbors outside and the children inside.
Mrs. Hebert also described an incident where appellant, while driving by, saw her with her husband and Corey at a shop, and stopped her car in the middle of the street, calling to the child to come to her. The child started off and had to be restrained because of the danger of running into the street. The mother then pulled partly into a parking area and created a scene.
Mrs. Haas testified that following the separation Mrs. Boudreaux and Corey lived with the Haases for about three weeks before moving to a place of their own. During that period appellant was visited by two men, one of whom was found sleeping on the sofa with her in the early morning hours. (Mrs. Boudreaux denies this.)
After hearing all of the testimony the judge summarized the matter and commented on the evidence underlying his reasons for continuing custody in the father. The court considered the testimony of Dr. Jones was one-sided because the father was not interviewed. In the absence of any input from the father the judge failed to see how the doctor could conclude it was in the best interest of the child that he be with the mother, based on the type of evaluation conducted. "He was also concerned because'the custodial parent had not even been consulted, thus tainting the overall attitude and evaluation.
The trial judge has much discretion in custody cases. He has heard and seen the witnesses and noted their demeanor on the stand, and our Supreme Court in Bor-delon v. Bordelon, 390 So.2d 1325, 1329 (La. 1980), has set the standard of review to be used in such cases:
“This Court has clearly stated that in child custody cases, the procedure for appellate review is to give great weight to the determination of the trial judge, and to overturn a determination only when there is a clear abuse of discretion.

Although the psychiatrist concluded the best interest of the child would be served by granting custody to the mother, the court was free to accept or reject his conclusions.
After making his own evaluation the trial judge may accept or reject an opinion expressed by any medical expert depending on how impressed he is with the qualifications, credibility and testimony of that expert; in short, he is obligated to evaluate the testimony of a medical witness according to the same rules applicable to any other witness. Tebbe v. Avegno, 435 So.2d 513 (La.App. 4 Cir.1983); Davenport v. McCullough Services Baroid Div., 388 So.2d 453 (La.App. 2 Cir.1980); Guidry v. Davis, 382 So.2d 250 (La.App. 3 Cir.1980); Lewis v. Orleans Parish Sch. Bd., 371 So.2d 328 (La.App. 4 Cir.1979).
*1241 Unfortunately Corey is a product of a broken home. The judge found no evidence was presented to him that the child would improve or be any better off than he is now with the father. Thus he concluded it is in the child’s best interest to leave the custody as it is and to permit Mrs. Bou-dreaux to exercise liberal visitation privileges as set forth in the consent judgment.
The decision is not an abuse of the great discretion afforded trial judges in custody cases and neither is it clearly wrong.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.