483 So.2d 647 (1986)
Izola SMITH
v.
John DOE, Physicians New Orleans Foundation, a/k/a Saint Charles General Hospital, and XYZ Insurance Company.
No. CA-3567.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1986.
*648 Clyde A. Ramirez, I. David Warner, III, Patricia D. Miskewicz, New Orleans, for plaintiff-appellee.
Daryl A. Higgins, Windhorst, Pastorek & Gaudry, Gretna, for defendant-appellant.
Before SCHOTT, BARRY and LOBRANO.
BARRY, Judge.
St. Charles General Hospital appeals a finding that it was negligent to a patient and claims the award of $80,000 plus $21,022.80 for medical expenses was excessive.

*649 FACTS
Izola Smith testified she was in a four person room in St. Charles General on October 5, 1983 recovering from knee surgery. Ms. Smith said four full bedpans had not been replaced (overnight) so she buzzed for assistance to go to the bathroom (her deposition didn't mention the call). When no one responded she used her crutches but fell when the right crutch slipped inside the bathroom door. Her roommate, Ms. Paula Bassemier, went to her aid. Within five minutes Cliff Grady, a therapist, and an unnamed doctor responded to the commotion and lifted her back on the bed. Ms. Smith said her knee bandage was bloody and her gown and robe were "soaking" wet. She did not see water on the floor before the fall.
Ms. Smith did not recall anyone mopping the bathroom prior to her fall although she could see that area when sitting in bed. She said the housekeeper went in after the accident and wiped the floor with a dry mop. Ms. Smith noted a constantly leaking pipe (for washing bedpans) by the commode. She testified plumbers, not maintenance personnel, went in after the accident to make repairs.
Ms. Bassemier confirmed Ms. Smith's testimony that four bedpans were not replaced and she said the leaky bathroom pipe had been reported. She stated Ms. Smith attempted to get up by herself only after no staff member responded to her calls. She said just before the accident someone mopped the bathroom area, but she did not know if Ms. Smith saw the housekeeper or was asleep.
After the accident Ms. Bassemier released her traction and rushed to help. She said in three to five minutes a therapist (in court she admitted a mistake as to his race) came and put Ms. Smith in bed. She claims the floor was wet and so was Ms. Smith's gown. She did not see blood on the knee bandage. Ms. Bassemier stated the floor was wet due to mopping, not from the leaky plumbing.
The housekeeper, Ms. Holly Tyler, testified she had not yet cleaned Ms. Smith's bathroom. She was cleaning the room next door when she heard a scream and responded. She helped Mr. Grady pick up Ms. Smith from the bathroom doorway and place her in bed. She did not notice a wet gown, found nothing on the bathroom floor, and did not remember a leaky pipe. After the accident Ms. Tyler cleaned and mopped Ms. Smith's bathroom.
Mr. Clifton Grady, Director of Respiratory Therapy, testified he heard a noise, responded and picked up Ms. Smith. He noticed no water on her clothes and recalled no leaks. He saw no reason to check the bathroom floor since he thought Ms. Smith fell on the carpet between her bed and the doorway apparently on her way from the bathroom.
According to the hospital's maintenance records no employee repaired a leak in Ms. Smith's bathroom on the day of the accident.

MEDICAL
After the fall Ms. Smith began to complain of lower back pain which radiated into her legs. Her hospital discharge summary by Dr. Watermeier, orthopedic surgeon, notes the fall and lower back injury. He said she had a sprain with no objective findings. He suspected a lumbar disc syndrome but never "worked her up".
Dr. Schuhmacher, neurosurgeon, hospitalized Ms. Smith and conducted an EMG, CAT scan, myelogram and nerve studies. The objective test results were all normal, but he indicated he had no reason to think Ms. Smith was faking or malingering.
Dr. Darrell Richards, a chiropractor, found indications of pathology in the L3-L4 area. He treated Ms. Smith for a bone (placet) pushing on a nerve, but her condition did not improve.
Ms. Smith saw Dr. Kenneth Vogel, neurosurgeon, in January, 1984, who found some degeneration, but no herniated disc. An arthrogram was positive for lumbar facet arthropathy at L3-L4 on the left side, which indicated the joints were causing pain. On May 16, 1984 Dr. Vogel performed *650 a neurotomy which severed the nerve and reduced the pain. Dr. Vogel anticipated 80-90% relief within one year from surgery.

LIABILITY
A hospital is bound to exercise the requisite amount of care which a patient's condition may require. The hospital has a duty to protect a patient from dangers that may result from the patient's physical and mental incapacities as well as from external circumstances peculiarly within the hospital's control.
Whether a hospital has breached its duty to a particular patient depends upon the circumstances and facts of each case. Hunt v. Bogalusa Community Medical Center, 303 So.2d 745 (La.1974).
A private hospital is not an insurer of a patient's safety. It is not required to guard against or take measures to avert a situation which a reasonable person under the circumstances would not anticipate. Ray v. Ameri-Care Hospital, 400 So.2d 1127 (La.App. 1st Cir.1981), writ denied 404 So.2d 277 (La.1981); De Blanc v. Southern Baptist Hospital, 207 So.2d 868 (La.App. 4th Cir.1968).
The trial court was presented with conflicts in the lay and expert testimony. Ms. Tyler and Mr. Grady did not agree where Ms. Smith had fallen. Although Tyler and Grady placed each other at the scene, only Tyler claimed nothing was on the bathroom floor. Ms. Smith and Bassemier clearly testified that Smith's gown was wet because of water on the floor. However, their testimony contained discrepancies about the knee bandage and as to the hospital employee(s) who assisted.
The judge apparently discounted the hospital's claim that Ms. Smith fell because she did not know how to use the crutches. Ms. Smith testified she trained for the crutches and the doctor stated Ms. Smith used crutches before and after the surgery. The trial judge noted the unattended bedpans and lack of response to the calls for assistance. He concluded the fall occurred because of water on the floor either from the leak or after the bathroom was mopped.
The hospital did not meet its burden of proving by a preponderance that Ms. Smith failed to act as a reasonable and prudent person and her negligence was a contributing cause of the accident. Credibility findings supported by the record will not be disturbed unless clearly erroneous. Avilez v. South Jefferson General Hospital, 403 So.2d 1260 (La.App. 4th Cir.1981). We find no manifest error.

QUANTUM
The hospital claims the $80,000 award is excessive and points to the lack of objective findings. Dr. Schuhmacher found no objective evidence to explain the back pain. However, Dr. Vogel said her condition warranted surgery. At one point Dr. Watermeier deposed she had a back sprain with no objective findings, but later suspected lumbar disc syndrome without a "work up". The chiropractor found clear indications of pathology.
After weighing and evaluating all the evidence and testimony, the trier of fact may accept or reject any expert opinion depending on his impression of the expert's qualifications and testimony. This credibility determination will not be disturbed absent manifest error. Tebbe v. Avegno, 435 So.2d 513 (La.App. 4th Cir.1983), writ not considered 441 So.2d 753 (La.1983).
The trier of fact has much discretion in awarding damages under pre-1985 La.C.C. Art. 1934(3). In reviewing awards the appellate court is limited to determining whether the trial court abused its discretion under the facts and circumstances of the case, not substituting its opinion as to damages. Reck v. Stevens, 373 So.2d 498 (La.1979).
The trial court reasoned Ms. Smith experienced varying degrees of back pain from October 5, 1982 and underwent extensive testing and surgery. He noted her continuing pain evidenced by her trial demeanor *651 and her anticipated one year recovery period (to obtain 80%-90% relief). After a review of the record and a consideration of awards in similar cases, we find no abuse of discretion.
The hospital also claims the amount of special damages encompasses bills, testing and treatment of complaints other than for back pain. The East Jefferson Hospital charges unrelated to the back were identified by Dr. Schuhmacher and excluded. The disputed Mercy Hospital bill represents an itemization of treatment and surgery expenses relating to the back as diagnosed by Dr. Vogel. The award of $21,022.80 for medical expenses is supported by the record.
The judgment is affirmed.
AFFIRMED.