KLEES, Judge.
This suit arises out of the death of Ms. Adline Anderson which occurred while she was a patient at Charity Hospital in New Orleans. Plaintiffs sued Charity Hospital and the State of Louisiana claiming negligence on the part of Charity Hospital caused Ms. Anderson’s death. From a trial court judgment rendered in favor of Charity Hospital, the plaintiff appeals. We affirm.
Ms. Anderson went to Charity Hospital’s emergency room on January 11, 1984 at 4;00 p.m. to have an abscess on her arm lanced. The abscess was due to intravenous drug abuse. The deceased’s history of drug use consisted of cocaine, heroine, talwin and pyribenzamine (T’s & blues) and ritalin.
After having her arm lanced, Ms. Anderson was evaluated by the Crisis Intervention Unit and then admitted to the Detoxification Unit at approximately 3:00 a.m. on January 13. At the time of admittance to the detoxification unit, Ms. Anderson’s temperature was normal, her vital signs were stable and she was ambulatory. Later that afternoon she complained of weakness and fatigue and went to lie down. Sometime between 4:30 p.m. and 5:00 p.m. on January 13, Ms. Anderson was found in a comatose condition. She was resuscitated, but she remained in the comatose state until her death on January 20.
At trial, the plaintiff attempted to prove that Charity Hospital was negligent in its care of Ms. Anderson. Specifically, plaintiffs claimed a doctor or nurse at Charity Hospital administered an illicit drug to Ms. Anderson or that the decedent ingested a high dosage of methadone and that this caused her death. The defense argued that it was not Charity Hospital’s negligence which caused Ms. Anderson’s death, but rather a systemic sepsis reaction, an infection in the bloodstream, brought upon by intravenous drug abuse. After a trial on the merits, the trial judge found there was no proof of negligence and dismissed Charity Hospital.
On appeal, plaintiff argues that the trial judge improperly allowed the deposition of defense expert witness, Dr. Richard McConnell, into evidence at trial. They contend La.C.C.P. article 1450(A)(3) sets forth those instances whereby the trial court will allow a deposition to be used at trial, none of which apply to Dr. McConnell.
La.C.C.P. article 1450(A)(3) reads as follows:
Art. 1450. Use of depositions
At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (a) that the witness is dead; or (b) that the witness is at a greater distance than one hundred miles from the place of trial or hearing, or is out of this state, unless *1220 it appears that the absence of the witness was procured by the party offering the deposition; or (c) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.
After an examination of the record in this matter, it is clear that the trial judge acted well within his discretion when he allowed Dr. McConnell’s deposition to be used at trial. The erratic and expansive time period of this case was such that exceptional circumstances arose at the time of trial which precluded Dr. McConnell’s presence in court on the day of trial. The case was filed on January 18, 1985 and set for trial on October 15, 1986. On October 14, 1986, the day before the trial was to begin, the plaintiff filed motions to continue and to extend discovery deadlines. The court reset the trial for February 24, 1987. Plaintiff again moved to continue and extend discovery deadlines. The case was continued until September 15, 1987. Shortly before the trial was to begin, the plaintiff moved for a third continuance. The trial court granted the motion and reset the trial for December 8, 1987. Several days before the trial date, the court notified counsel for all parties that the trial was continued to the next day, December 9. Previously, every time the case was set for trial, the estimated trial time was one day. Dr. McConnell was available for trial on each occasion, including December 8. When the case was continued to December 9 by the court, Dr. McConnell had prior scheduled engagements out of town. Defense counsel noticed and took Dr. McConnell’s deposition for perpetuation. While being deposed Dr. McConnell stated that he had arranged to be at trial on December 8 and had plans to leave New Orleans for Panama City that night. Considering the circumstances of this matter and the fact that plaintiff’s counsel had the opportunity to question Dr. McConnell at the deposition, we find the trial judge’s decision to allow the deposition at trial was in the interest of justice and not manifestly erroneous.
The next issue to address is whether or not Charity Hospital was negligent in its treatment of Ms. Anderson while she was a patient in the detoxification unit.
It is well settled that a hospital is bound to exercise the requisite amount of care toward a patient that the particular patient’s condition may require. It is the hospital’s duty to protect a patient from dangers that may result from the patient’s physical and mental incapacities as well as from external circumstances peculiarly within the hospital’s control. Whether a hospital has breached its duty to a particular patient depends upon the circumstances and facts of each case. Hunt v. Bogalusa Community Medical Center, 303 So.2d 745 (La.1974); Smith v. Doe, 483 So.2d 647 (La.App. 4th Cir.1986).
The trial court was presented with conflicting expert testimony as to the cause of Ms. Anderson’s death. Dr. Robert Bur-nette, a pathologist, testified on behalf of the plaintiff. Dr. Burnette testified that his review of Ms. Anderson’s medical records indicated she possibly died of a disseminated intravascular coagulation condition caused by damage to the vascular system which resulted in widespread clotting of the blood and hemolysis at the same time. He stated that it was his opinion that Ms. Anderson had an allergic reaction to an illicit drug, either administered to her intravenously or orally, and that this reaction resulted in disseminated intravascular coagulation. Dr. Brunette also testified that sepsis or defusion of the blood could cause the condition of or one similar to disseminated intravascular coagulation.
The plaintiff also presented Dr. Peter Macaluso, an expert in addictionology, which is the diagnosis, treatment and management of addictive disorders. Dr. Macaluso testified Charity Hospital was below the standard of care in several areas. *1221 These included a lack of security for the detoxification unit, incomplete medical records, the administration of high levels of methadone and the failure to conduct proper supervision of persons receiving methadone. He stated Ms. Anderson’s death was consistent with a drug overdose from a depressive drug whose identity was unknown because a toxicology screen was not performed at the time of autopsy.
The defense presented Dr. Monroe Sam-uels, head pathologist and director of the pathology lab at Charity Hospital. Dr. Samuels testified that after reviewing the autopsy slides and report, he concluded the cause of Ms. Anderson’s death was sepsis. He explained that the decedent was a drug addict with an abscess on her arm caused from intravenous drug use but that there was no infection at the time of her admission to Charity Hospital. It was his opinion that a small pocket of pus and bacteria broke loose and spread in her vascular system causing the septic condition which eventually caused pulmonary collapse.
Mrs. Victoria Giblin, a medical technician under the direction of Dr. Samuels and supervisor of Charity’s clinical pharmacology and toxicology lab, also testified for the defense. She stated a toxicology urinalysis was done shortly after Ms. Anderson was found in the comatose state. She further testified that the computer which analyzes the urinalysis test results is able to identify 17,000 substances including methadone. The urinalysis was submitted to two different tests which would have identified methadone and methadone was not found in Ms. Anderson’s system. She testified that the unidentified drug which did appear in the decedent’s system was not among the 17,000 drugs in the computer data base, therefore, the drug was listed as an unidentified compound on the pathology report.
Dr. Richard McConnell, head of emergency medicine at Ochsner Foundation Hospital, through his deposition admitted at trial, testified that he disagreed with Dr. Macalu-so’s contention that Ms. Anderson died from a methadone overdose. He explained that the emergency procedures administered to the decedent included a narcan antidote and the immediate infusion of an intravenous fluid. Had Ms. Anderson died from an overdose of depressant medication she would have responded to these emergency procedures. Dr. McConnell opined that Ms. Anderson died from sepsis because the septic condition would not have responded to the emergency procedures administered to her.
A review of the evidence indicates that the standard of care the Charity nurses and doctors administered to the decedent was adequate under the circumstances. Her medical chart contained instructions that her vital signs were to be taken four times a day until the patient had no fever. When Ms. Anderson’s vital signs were taken on January 11 and 12 they were normal. She had no fever. She was then admitted to the detoxification unit where they were taken again and were shown to be normal. Because she had no fever, her vital signs were taken twice a day while in the detoxification unit. The medical orders were followed. The medical records also indicate that Ms. Anderson showed no signs of withdrawal which would have put the staff on alert. Prior to her comatose state, she simply complained of being weak and very tired, so she went to rest. Her lapse into the coma was sudden and unanticipated. When she was found in this condition, the doctors and nurses on duty responded immediately. We can find no negligence on their part. Furthermore, the record is devoid of evidence which reveals that Ms. Anderson was given an illicit, lethal drug. It should be noted that the coroner’s autopsy report stated the cause of death was felt to be hematological problems related most likely to her history of extensive drug abuse.
After weighing and evaluating all the evidence and testimony, we conclude the trial court properly found no negligence on the part of Charity Hospital in the death of Ms. Adline Anderson.
Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.