430 So.2d 1024 (1982)
The SUCCESSION OF J. Oswald MONTEGUT.
Nos. 5-41, 5-42.
Court of Appeal of Louisiana, Fifth Circuit.
December 9, 1982.
On Rehearing April 11, 1983.
*1025 Daniel E. Becnel, Jr., Reserve, for succession.
Michael Heltz, Gramercy, for John and Criswell Montegut.
Calvin Lucien Perilloux, LaPlace, for Marjorie Sutton.
Before SAMUEL, GAUDIN and MELVYN, JJ.
GAUDIN, Judge.
Appellants are John and Criswell Montegut, two of the three children born to J. Oswald Montegut and his wife, Marjorie.
They have appealed from a judgment of the Twenty-Ninth Judicial District Court that:
(1) Declared the legacy of the Montegut residence by J. Oswald Montegut to Marjorie Montegut Sutton (the third child born to J. Oswald and Marjorie Montegut) to be valid and not a prohibited substitution;
(2) Decided the extent or boundary of the batture left to Marjorie Montegut Sutton by J. Oswald Montegut; and
(3) Determined that oppositions to the accounts filed by Marjorie Montegut Sutton, as executrix of the estate of J. Oswald Montegut, had in fact been contradictorily heard by the court.
After considering the testimony of the various witnesses, the documents in evidence and the jurisprudence and statutes of this State, we are of the opinion that the bequest of the Montegut residence to Marjorie Montegut Sutton was not a prohibitive substitution. Appellants' other contentions, however, have more substance, and we remand for further proceedings consistent with the views hereinafter expressed.
In a last will and testament dated October 24, 1969, and in five codicils, J. Oswald Montegut left various assets to his wife and to each of his three children. Mr. Montegut died on November 19, 1977, and Mrs. Montegut on June 7, 1978.
While the succession proceedings were complex, we are concerned only with the three issues raised on appeal by John and Criswell Montegut.
Hereinafter, J. Oswald Montegut is referred to as Mr. Montegut, his wife as Mrs. Montegut and the children by their first names.

FIRST ISSUE
Mr. Montegut's October 24, 1969, will, in part, reads:
"I confirm the usufruct which my wife Marjorie Montegut enjoys under the law to my interest in the community property which we own at the time of my death, or any other property which I own, I leave to her. Our home and lot is left to my wife...
"I give and bequeath to my daughter Marjorie M. Sutton my home and lot together with the brick apartment located in the rear... I have already given to my sons John and Criswell shares of common stock and other consideration for whatever interest they would ordinarily have had in this property."
On February 25,1977, Mr. Montegut executed this codicil:
"I hereby add this codicil to my last will and testament made on October 24 day of 1969 in which I confirm the usufruct of our home to my wife Marjorie Montegut, later in the same will I gave and bequeath to my daughter Marjorie M. Sutton my home and lot together with the brick apartment located to the rear of my dwelling. My purpose and intention was to leave our home and lot and apartment *1026 and the usufruct, the entire use of the home lot and apartment to my wife Marjorie Montegut for the balance of her entire life. The home, lot and apartment is to become the property of my daughter Marjorie only after the death of my wife Marjorie."
A bequest of property to one legatee with the stipulation that upon his or her death the property shall then belong to another person named in the will is a substitution barred by LSA-C.C. art. 1520, which reads:
"Substitutions are and remain prohibited, except as permitted by the laws relating to trusts.
"Every disposition not in trust by which the donee, the heir, or legatee is charged to preserve for and to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee."
On the other hand, naked ownership of property may be left to one person and the usufruct to another, in accord with the provisions of LSA-C.C. art. 1522:
"The same shall be observed as to the disposition inter vivos or mortis causa, by which the usufruct is given to one, and the naked ownership to another."
While Mr. Montegut's wording could have been more precise, we cannot say that the trial judge was manifestly wrong when he decided that Mr. Montegut intended to leave the naked ownership to Marjorie and the usufruct to Mrs. Montegut.
LSA-C.C. art. 1712 states:
"In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament."
Mr. Montegut, in an apparent attempt to treat his children fairly, left Marjorie the "... home and lot ..." to offset "... shares of common stock and other consideration..." given to his two sons, John and Criswell.
In the will and again in the pertinent codicil, Mr. Montegut used the word "usufruct"; and in the codicil, he wrote that his "... purpose and intention was to leave... the entire use of the home lot and apartment to my wife for the balance of her entire life ..." with these assets "... to become the property of my daughter Marjorie only after the death of my wife..."
In determining a testator's intent, the whole of the will must be considered and every word given effect. What is stated in one segment of a will may be called upon to explain what is meant in an unclear part. See Succession of Martin, 262 So.2d 46 (La.App. 1st Cir.1972), writ denied, 263 So.2d 729.
Mr. Montegut authored the will and the February 25, 1977, codicil without an attorney's supervision, and there is some ambiguity with regard to his intended disposition of the house. In the codicil, however, he tries to explain his "... purpose and intention ..." concerning the house and to remove any uncertainty. The district judge's interpretation, in favor of Marjorie, was reasonable considering all of Mr. Montegut's words and expressions, and we will not disturb it.
Accordingly, there was no illegal substitution. The naked ownership was left to Marjorie, subject to Mrs. Montegut's lifetime usufruct.

SECOND ISSUE
In a codicil dated May 12, 1977, Mr. Montegut wrote:
"I hereby add this codicil to my last will... I hereby leave, give and bequeath to Marjorie M. Sutton the batture fronting the lot on which my home is located, the batture behind the levee."
The Montegut home fronts on Jefferson Highway, which at one time was immediately adjacent to the levee. The present levee, however, is situated closer to the Mississippi River, leaving an area between it and Jefferson Highway, as per this simplified, not-to-scale sketch:
*1027 
Appellants argue that the "batture" in Mr. Montegut's codicil includes only the land between the present levee and the river (the "... batture behind the levee"), and not the area between the highway and the present levee.
The district court, however, agreed with Marjorie's contention, that the "batture" included the land between the present levee and the river and the area between the highway and present levee, that is, "... the batture fronting the lot on which my home is located..."
In his assigned reasons for judgment, the trial judge stated that he relied on (1) a statement by Marjorie that "... persons of her late father's generation referred to all property from the Mississippi River to Jefferson Highway as batture...", (2) a map from the records of the Clerk of Court, showing the batture outlined in red, (3) an act of donation by Mr. and Mrs. Montegut to John, containing a batture description, (4) official acts of a deceased notary, D. Elmore Becnel, including his property descriptions, and (5) "... other official documents recorded in this Parish and discussed during the trial of this matter..."
The record before us, however, is silent with regard to any statement Marjorie may have made concerning "... persons of her late father's generation...." Also, the record does not indicate that the map from the Clerk of Court's office or any of the other referred-to documents were placed in evidence; therefore, they were not appropriately before the trial judge and they are not now before us for review.
Items of evidence which are not properly introduced in evidence, although they may actually be physically placed in the record, cannot be considered by the trial court in deciding the merits of the case. See State Department of Highways v. Colby, 321 So.2d 878 (La.App. 1st Cir.1975) and many similar cases.
Consequently, that part of the district court judgment concerned with the batture is voided, and the matter is remanded to the Twenty-Ninth Judicial District Court for another hearing on this question.

THIRD ISSUE
Annual accounts were filed by Marjorie, as executrix, and oppositions were duly and timely filed by John and Criswell. The record does not show that any contradictory hearings were ever scheduled, and it was error for the trial court to conclude that such hearings had been held.

CONCLUSION
For the foregoing reasons, we affirm that segment of the district court judgment stating that Mr. Montegut legally left the naked ownership of the Montegut residence to his daughter Marjorie, subject to Mrs. Montegut's lifetime usufruct; we annul and set aside the portion of the judgment stating that the batture included the area from Jefferson Highway to the Mississippi River; we likewise annul and set aside the part of the judgment saying that all oppositions to the annual accounts have been resolved; and we remand to the trial court for further proceedings concerning (1) the extent of the batture left to Marjorie and (2) the oppositions to the annual accounts.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.

ON REHEARING
GAUDIN, Judge.
We granted a rehearing after it was contended by John and Creswell Montegut that the record, despite the trial judge's reliance on and reference to testimony and documents *1028 not in evidence, did nonetheless contain sufficient testimony and evidence for us to determine the extent of the batture left to Marjorie Sutton.
On rehearing, however, we remain of the opinion that this determination should initially be made by the trial judge, considering only testimony and evidence properly admitted.
Our original decree, therefore, is reinstated.