CURRAULT, Judge.
This appeal arises from a judgment rendered in the succession of J. Oswald Monte-gut wherein certain assets of the estate were distributed. The appellant is Marjorie Montegut Sutton, daughter of J. Oswald Montegut and his deceased wife, Marjorie Henry Montegut. The appellees are John and Criswell Montegut, Mrs. Sutton’s two brothers.
J. Oswald Montegut died on November 19, 1977. At the time of his death, J. Oswald Montegut was survived by his wife, Marjorie Henry Montegut, and his three above-named children. Mr. Montegut’s last will and testament, in olographic form dated October 24, 1969, together with five codicils dated July 5, 1976, October 16, 1976, February 25, 1977, May 12, 1977, and June 4, 1977, were duly probated on November 28, 1977. Marjorie Montegut Sutton was appointed and confirmed as the testamentary executrix of her father’s estate.
J. Oswald Montegut’s wife, Marjorie Henry Montegut, died testate on June 7, 1978. She was survived by the three children born of her marriage to J. Oswald Montegut. Criswell Montegut, appellee, was appointed and qualified as the dative testamentary executor of the succession of Marjorie Henry Montegut, following which the two cases were consolidated. Mrs. Montegut also executed a last will and testament in olographic form bequeathing all her property to Mr. Montegut. As Mr. Montegut predeceased her, that will was given no effect.
In his last will and testament and the codicils attaching thereto, Mr. Montegut specifically bequeathed to his daughter the family home and lot along with a brick apartment located to the rear of the dwelling. He further bequeathed to Marjorie the batture:
“fronting on the lot on which my home is located, the batture behind the levee.”
To his sons, Mr. Montegut bequeathed a plot of land to the rear of the family home known as the pasture. Mr. Montegut further gave three trucks to John and his automobile to Criswell. The bequest to Marjorie was made to balance previous gifts of shares of common stock and other “considerations” given to John and Cris-well.
Numerous pleadings were filed as Mr. Montegut’s succession proceedings progressed and judgment in due time was rendered which was subsequently appealed to this court by John and Criswell Monte-gut. The trial court judgment decreed that:
“the former family home occupied by Mr. and Mrs. Montegut (the Montegut residence and the parcel of land measuring 146 feet front on Jefferson Highway by a depth of 258 feet) was to be divided as follows: one-sixth (⅞) to Marjorie Sutton, appellant, and the remaining five-sixths (⅝) to the three heirs, share and share alike; (2) that parcel of ground immediately behind the Montegut’s residence, referred to as the pasture, would be divided as follows: one-sixth (V6) to John and Criswell Montegut and the remaining five-sixths (⅝) to be divided, share and share alike, by the three heirs; and (3) the batture between the levee and the edge of the Mississippi River, located predominantly opposite the residences of John Montegut and the decedents (comprising approximately 6.72 acres, with a *1047 width of approximately 257 feet alongside the levee), together with the lot of ground fronting on the river side of Jefferson Highway (located between the Jefferson Highway and the Mississippi River levee) was to be divided as follows: one-sixth (⅛) to Marjorie M. Sutton and five-sixths (⅝) to the three heirs, share and share alike.”
Three issues were presented on appeal:
“(1) Whether the legacy of the Montegut residence by J. Oswald Montegut to Marjorie Sutton was valid or whether said legacy constituted a prohibited substitution;
(2) What was the extent or boundary of the batture left to Marjorie Montegut Sutton by J. Oswald Montegut; and
(3) Whether oppositions to accounts filed by the executrix of the J. Oswald Monte-gut estate had been contradictorily heard by the trial court.
This court concluded that the legacy was valid; but reversed and remanded for lack of evidence on the other two issues.[1]
No further appeals were taken from the trial court’s judgment of February 9, 1981, nor from the Louisiana Fifth Circuit Court’s decision. Pursuant to this court’s ruling, the trial court held a hearing on January 10, 1984 on the issue of the extent of the batture bequest.
The trial court ordered arguments in the case to be heard on September 26, 1984; and after hearing those arguments, on October 17, 1984, the trial court rendered judgment as follows:
“(1) Marjorie M. Sutton to be entitled to a one-sixth (Ve) interest in and to the batture fronting the Montegut estate residence, limited to the batture or land lying between the southern boundary or riverside edge of the present levee and the Mississippi River, and only insofar as said batture fronts the Montegut estate residence; and John Montegut, Criswell Montegut and Marjorie M. Sutton to be entitled to receive a one-third (Vs) interest each in and to the remaining %ths interest in said batture, or 5/isths each;
(2) John Montegut, Criswell Montegut and Marjorie M. Sutton to be entitled to a one-third (Vs) interest each in and to all real estate owned by the estates of J. Oswald Montegut and Marjorie M. Sutton lying between the northern boundary of the Jefferson Highway and the Mississippi River levee, together with all bat-ture owned by said estates not covered by the previous paragraph;
(3) Criswell Montegut was to return the sum of $5,000.00 to the estate of Marjorie Montegut Sutton from the funds ($25,400.09) given by J. Oswald Monte-gut to be used for the care of Mrs. Marjorie Henry Montegut;
(4) John Montegut was ordered to account for all rental proceeds he had received from the garage apartment owned by the estates and for rental of the Mon-tegut estate residence; and
(5) Marjorie Montegut Sutton was ordered to disburse all funds under her administration as the executrix of the estate of J. Oswald Montegut to the three heirs, in equal shares.”
It is from that judgment Marjorie Monte-gut Sutton now appeals, presenting the following issues for our review:
(l)(a) It was error for the court to find that Marjorie Montegut Sutton was entitled to a one-sixth interest to the batture described limited to land lying between the riverside edge of the Mississippi River levee and the river with the three heirs entitled to one-third interest each to any remaining batture; (b) and further to find that the three heirs were entitled to one-third interests each to all real estate, owned by the estates of either parent, lying between the northern boundary of the Jefferson Highway and the Mississippi River levee, together with all batture owned by the estates which was not included within the part to which Marjorie was found entitled to an extra one-sixth;
*1048 (2) It was error for the court to state that it was established that J. Oswald Mon-tegut transferred the sum of Twenty-Five Thousand Four Hundred Dollars and Nine Cents ($25,400.09) to his son Criswell Mon-tegut to be used for the care of Mrs. Marjorie Henry Montegut and that it was anticipated that Criswell would receive his mother as a resident in his own home; and that he should not have to further account for these funds and was only to return Five Thousand Dollars ($5,000) of these funds to his mother’s estate;
(3) It was error for the court to order that John Montegut should pay rental proceeds, owed to the estate of his own father, to his mother’s estate; and similarly pay rent for his personal use of the residence to his mother’s estate rather than his father’s estate; and
(4) It was error for the court to order Marjorie Montegut Sutton to disburse all funds under her administration in equal shares to the three heirs as there are outstanding expenses of the estate.
Appellant’s first issue involves two distinct questions. The first part of the specification of error questions the fractional interest of the parties allocated by the trial court.
In this regard, our review of the record reveals that the trial court determined the same proportions in the judgment of February 9, 1981, which was subsequently appealed to this court. The proportional division of the property in the judgment was not appealed by either party at that time. Thus we find that the issue has become the law of the case.
In Glenwood Hospital, Inc. v. Louisiana Hospital Service, Inc., 419 So.2d 1269 (La.App. 1st Cir.1982), the court explained:
“the law of the case principle relates to (a) the binding force of a trial judge’s rulings during later stages of trial, (b) the conclusive effects of appellate rulings at trial on remand and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. The law of the case principle is merely a discretionary guide, however. Reargument in the same case of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling. But in cases of palpable error or where, if law of the case were applied, manifest injustice would occur, the principle will nto be followed. Petition of Sewerage & Water Board of New Orleans, 278 So.2d 81 (La.1973)." At page 1271.
See also Mayer v. Valentine Sugars, Inc., 444 So.2d 618 (La.1984).
Because we find neither palpable error in the original fractional distribution among the heirs nor that manifest injustice would occur by applying law of the case rule, that principle acts as a bar to our review of the issue in this appeal.
The second portion of appellant’s first specification of error raises the question of the extent of the property the deceased Mr. Montegut intended to leave by will to the appellant. The codicil of May 12, 1977, containing the bequest states in pertinent part:
“... I hereby leave, give and bequeath to Marjorie M. Sutton the batture fronting the lot on which my home is located, the batture behind the levee_”
Appellant asserts that in discussions held with her father prior to his death, he clearly indicated she was to receive the entire property fronting the lot and residence. That property would include the piece from the levee to the river as well as the section from the levee to the highway. The highway crosses in front of the residential plot. Appellant alleges that her father customarily used the term “batture” to refer to *1049 property both behind and in front of the levee.[2]
Appellees, on the other hand, denied such discussions occurred and insisted that their father intended to leave their sister only the batture behind the levee to the river.
In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however from the proper signification of the terms of the testament. LSA-C.C. art. 1712. A dispositon must be understood in the sense in which it can have effect rather than in which it can have none. LSA-C.C. art. 1713. LSA-C.C. Article 1715 provides that when the intent of the testator cannot be ascertained, recourse must be had to all circumstances which aid in the discovery of his intent. When it cannot be ascertained whether a greater or lesser quantity has been bequeathed, it must be decided for the least. LSA-C.C. art. 1717; Sidney v. Frosch, 413 So.2d 966 (La.App. 3d Cir.1982); writ den. 420 So.2d 446 (La.1982). See also Hopson v. Ratliff, 426 So.2d 1377 (La.App. 3d Cir.1983).
The trial court, after a hearing pursuant to our remand, reversed his prior holding and concluded that the testator intended to restrict the bequest to the property located between the river and the levee. However, while that portion of land may technically be termed batture, we conclude the testator did not use the word in its technical sense.
The deceased herein clearly refers to the “batture fronting the lot on which my home is located.” As noted in our previous opinion in this case and shown by the map (Footnote 2), the levee originally was located closer to the highway; thus the two pieces of property originally were both considered batture.
Further evidence of the testator’s intent can be inferred from the fact that the bequest was in consideration of other property given the sons inter vivos. It should also be noted that sons were given the pasture land behind the home. Reading the will and codicil as a whole, coupled with these facts, leads to the conclusion that the testator intended appellant to receive the portions both in front and behind the levee.
While we recognize, as appellee points out, that the “comma” instead of an “and” causes some confusion at first glance; in our opinion, the comma can just as easily have been used in place of the word “and” as is often done in common speech. The word “fronting” however indicates a close connexity to the residential lot. Thus, we add to and find appellant is entitled also to one-sixth (⅛) interest to the land lying between the northern boundary *1050 of the Jefferson Highway and the levee insofar as it fronts on the Montegut estate residence, with the remaining interests to be divided one-third (⅛) each to John, Cris-well and Marjorie.

*1049

*1050 Appellant’s second specification of error is related to Twenty-Five Thousand Four Hundred Dollars and Nine Cents ($25,-400.09), apparently transferred by the deceased Mr. Montegut to his son Criswell prior to the death of Mr. Montegut.
The trial court states in the judgment that it was established that the transfer was made in order to provide for the care of Mrs. Marjorie H. Montegut, the mother of the parties herein.
We have searched the record and failed to find either a transcript or note of evidence regarding the reason Mr. Montegut transferred the funds to his son prior to his death. Appellee asserts that a hearing on the matter, inter alia, was held on October 7, 1982. The minutes reflect that at that time several matters were taken under advisement; however, it is not clear that this issue was one of the matters heard.
Normally in cases where a transcript or note of evidence is missing from the record, it is well established in law that a trial judge’s determination is presumed correct. Tebbe v. Avegno, 435 So.2d 513 (La.App. 4th Cir.1983). Yet in the interest of justice, the court may remand for an evi-dentiary hearing on the matter. LeBlanc v. Guidry, 449 So.2d 442 (La.1984).[3]
Under LSA-C.C.P. Article 2164, the court is authorized to render any judgment which is just, legal and proper. Since it is unclear in this case that a hearing was held on this particular issue, we find that interest of justice dictates a remand for rehearing, with presentation of evidence and an opportunity for the parties to preserve testimony by means of a transcript.
Appellant’s third specification of error relates to the order by the trial court for rental proceeds owed by John Montegut for living in the family home to be paid to the mother’s estate as opposed to the father’s estate.
Appellant argues that a previous unap-pealed judgment ordered the same proceeds paid to the father’s estate and that the trial judge improperly reallocated the monies to the mother’s estate in the judgment now before the court. Appellees argue that as the property is community, it is irrelevant as to which estate receives the funds. We find neither party totally correct in their arguments.
Mr. Montegut predeceased Mrs. Montegut by almost seven months. Mrs. Montegut, while living, wás entitled to the usufruct over Mr. Montegut’s half of the community property including the rentals from the family home. LSA-C.C. art. 890; LSA-C.C. art. 550; LSA-C.C. art. 551. Thus, those portions of the rental money John Montegut was obligated for during that period, if in fact he owed such rental, would devolve to Mrs. Montegut’s estate. However we find no evidence that John was paying rent while his mother was alive.
After Mrs. Montegut’s death, rentals became due to both estates as each deceased owned one-half (V2) interest in the community property.
Consequently we find the judgment in error. The rentals are owed in halves to each estate.
Finally, appellant argues that the trial court erred in ordering a disbursement of all funds under her administration as executrix of the estate of J. Oswald Monte-gut as there are outstanding debts yet to be paid. Appellees argue that in testimony on the hearing held January 10, 1984, the executrix stated that the only debt outstanding was the estate’s income tax for April of that year.
*1051 Our review reveals that appellees are correct. Appellant during the January 10, 1984 hearing was questioned as to the un-disbursed assets and outstanding debts of the estate. Appellant unequivocally stated that the only debt left to be paid was the upcoming income tax and the tax preparer’s fee. Consequently, we find no error in the trial court’s order to disburse the remaining estate funds to the heirs in equal shares.
Therefore, after a review of the law and evidence, the trial court judgment is:
(1) Hereby affirmed as to that portion of the judgment entitling Marjorie M. Sutton to a one-sixth (⅛) interest in and to the batture or land lying between the southern boundary or riverside edge of the present levee and the Mississippi River, and only insofar as said batture fronts the Montegut estate residence, and entitling John Monte-gut, Criswell Montegut and Marjorie M. Sutton to receive a one-third (⅛) interest each in and to the remaining five-sixths (⅜) interest in said batture or five-eighteenths (¾8) each;
(2) Hereby amended to entitle Marjorie M. Sutton to a one-sixth (Ve) interest in and to the batture or land lying between the northern boundary of Jefferson Highway and the Mississippi River levee insofar as said property fronts the Montegut estate residence; and entitling Marjorie M. Sutton, Criswell Montegut and John Montegut to receive one-third (⅛) interest each in and to the remaining five-sixths (⅝) interest in said property or five-eighteenths (5/is) each together with all other batture owned by the estate of J. Oswald Montegut and Marjorie Henry Montegut not covered in paragraph 1 and/or 2;
(3) Hereby set aside and remanded for an evidentiary hearing on that portion of the judgment ordering Criswell Montegut to return Five Thousand Dollars ($5,000) to his late mother’s estate and relieving him from any further accounting:
(4) Hereby amended and remanded as to that portion of the judgment ordering an accounting from John Montegut for rental proceeds received from the garage apartment in the amount of Five Thousand Seven Hundred Nine Dollars ($5,709), and for rental proceeds he was ordered to pay on the Montegut estate residence, as per the trial court’s judgment of December 29, 1982, subject to the expenses incurred by him. He shall submit those expenses, by affidavit and/or invoices and receipts, by a time set by the trial court to be determined on remand; and shall pay to the succession of J. Oswald Montegut and succession of Marjorie H. Montegut one-half (½) to each of any rental proceeds not offset by the amount of his expenses.
(5)Hereby affirmed as to that portion of the judgment ordering Marjorie Montegut Sutton to disburse to John Montegut, Cris-well Montegut and herself, in equal shares, all funds she has under her administration, as the executrix of the estate of J. Oswald Montegut.
Costs of this appeal are to be divided between the parties.
AFFIRMED IN PART; AMENDED IN PART; SET ASIDE IN PART AND REMANDED.

. Succession of J. Oswald Montegut, 430 So.2d 1024 (La.App. 5th Cir.1983)

. Simplified, not to scale map:

. In LeBlanc, 444 So.2d 738 (La.App. 5th Cir.1984), this court applied the presumption of correctness of judgment where a hearing was set on the district court level but no witnesses called, no documentary evidence introduced and no depositions, affidavits or statements offered. However, the Louisiana Supreme Court reversed the decision and remanded the case for retrial of the matter.