618 So.2d 1220 (1993)
Don F. CARMOUCHE
v.
DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, State of Louisiana.
No. 93-CA-57.
Court of Appeal of Louisiana, Fifth Circuit.
May 12, 1993.
Paul Schexnayder, Baton Rouge, for defendant/appellant Dept. of Public Safety.
Norman A. Pettingill, New Orleans, for plaintiff/appellee Don F. Carmouche.
*1221 Before GRISBAUM, GOTHARD and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Department of Public Safety and Corrections, State of Louisiana (the State), appeals from a judgment which recalls the suspension of the drivers license of plaintiff, Don Carmouche, for refusal to take the breath analyzer test and orders the State to issue to plaintiff a drivers license. We reverse and reinstate the judgment of the administrative hearing.
Plaintiff was driving north on Severn Avenue in Metairie, Louisiana on the evening of January 15, 1992. As he approached the intersection of Severn Avenue and Veterans Highway he stopped at the "first" traffic signal, then crossed the intersection into the large median area where he stopped for the "second" signal light. The light turned green and he proceeded ahead, made a U-turn on Severn and headed back toward Veterans Highway. At that point, plaintiff was stopped by Clay Boudier, a Jefferson Parish Sheriff's Office deputy, for driving through a red light. Officer Boudier was parked in an automobile dealership at the corner of Severn Avenue and Veterans Highway. He was sitting in his vehicle facing west and parallel to Veterans Highway. He was only able to see the color of the "second" signal light which controlled the Severn Avenue traffic. Officer Boudier saw plaintiff came to a stop at the first light, then cross the eastbound lane of Veterans Highway. Officer Boudier followed plaintiff, stopping at the first signal light and waiting for it to turn green before crossing the median and westbound lanes of the highway, making the same U-turn as plaintiff. He stopped plaintiff on Severn just past Veterans Highway.
Officer Boudier asked plaintiff to exit the car. When plaintiff stood up, the officer noticed that the plaintiff's pants and belt were undone, he was unsteady and his breath had an odor of alcohol. The officer then performed several eye tests to judge plaintiff's alcohol impairment, if any. He also requested that plaintiff walk heel-to-toe for nine steps forward and nine steps back toward the officer. The plaintiff was also asked to recite the alphabet from "C" to "N".
After these tests, the officer believed that plaintiff was driving while intoxicated, informed him of his rights and took him to the Kenner police station where he asked plaintiff to perform a breath test. Plaintiff refused to sign the rights acknowledgment form and refused to perform the breath test.
As a result of his refusal to perform the breath test, plaintiff was arrested. His license was suspended after an administrative hearing pursuant to La.R.S. 32:667. Plaintiff then filed in the district court, a petition for review of the administrative judgment. Following the district court hearing, the trial judge rescinded the suspension based on the failure of the state to prove probable cause for the stop and the breach of departmental administrative regulations (the intoximeter machine was not approved by the department).
On appeal, the State asserts that the trial judge erred in finding no probable cause for the initial stop and in determining that the regulations describing the approved breath intoximeter were breached. It contends that the police officer's testimony showed that he had probable cause to stop plaintiff because he ran a red light. It contends that the officer was familiar with the traffic signals at the intersection. It further asserts that the trial judge applied the wrong standard in finding no "probable cause" because the DWI statute requires a lesser standard of "reasonable grounds". In addition, the State claims that the machine in question was, in fact, the approved machine, but an error in name was made when the original manufacturer was taken over by another company. That error was corrected in the regulations after this incident occurred. However, the State asserts that this correction was not substantive and thus should be applied retroactively.
Plaintiff contends that the State failed to meet its burden of proof. He asserts that the officer pulled him over for allegedly running a red light, but that no other grounds existed for suspicion of DWI. He *1222 also contends that the offer to plaintiff to take the breath test is invalid because the intoximeter was not approved and the correction of the names was a substantive change affecting his vested rights. Further, he asserts that the evidence of an emergency retroactive change was not produced at trial and should not be considered on appeal.
Part XIV of the Motor Vehicle and Traffic Regulation of the revised statutes regulates "Tests for Suspected Drunken Drivers". See: La.R.S. 32:661 et seq. Vehicle operators using public highways of the state are deemed to have consented to chemical testing for alcohol or drug usage while driving a vehicle on the highways, if arrested for an offense arising out of acts allegedly committed while the person was driving or in control of the vehicle. R.S. 32:661(A)(1). The tests shall be administered at the direction of a law enforcement officer "having reasonable grounds to believe the person to have been driving ... a motor vehicle upon the public highways ... while under the influence of either alcoholic beverages or any abused or illegal controlled dangerous substance ..." R.S. 32:661.
When the officer requests that the person submit to a chemical test, he must follow certain procedures. They include advising the driver of his rights and the effects of a refusal. See: R.S. 32:661(C). A refusal is not permitted in certain instances (involving injury or death) but a person may refuse if the event does not involve those specified circumstances. R.S. 32:666(A). The effect of such a refusal is the seizure of his license and subsequent automatic suspension for a period of time, unless the person requests an administrative hearing within 10 days. See: R.S. 32:666; 32:667.
When, as here, the party requests a hearing the state must prove that the officer had "reasonable grounds" to believe the person was driving while under the influence of alcohol, that he was placed under arrest, that he warned the person properly, that the person submitted to the test, that the test revealed a reading of .10 percent or above, that the person refused the test and any additional matters relating to the reasonableness of a suspension of the license. R.S. 32:668(A). If the party is dissatisfied with the conclusion to suspend the license, he is entitled to judicial review in the district court, and appellate courts, if necessary. See: R.S. 32:668(C); R.S. 32:414(F)(4).
The testimony herein shows that the officer intended to stop plaintiff for running a red light, not because he believed, at that time, that plaintiff was intoxicated. This is a traffic violation, requiring proof of probable cause for the stop to support a conviction. The probable cause for the stop was the action of plaintiff and the officer's knowledge and familiarity with the traffic light. Given these facts, we conclude that the trial judge erred in finding no probable cause for the stop.
The next issue then is whether there was a reasonable suspicion, once plaintiff exited the car, that he was driving while intoxicated. The officer testified that plaintiff was disheveled. Plaintiff was given three eye tests. He was unable to smoothly pursue the officer's fingers with his eyes in the first test in which the officer moves his hand or stimulus left to right and back again. In the second test, his eyes exhibited distinct jerkiness when the stimulus was brought from the center to the outside of the eye and held for several seconds. In the last test, the stimulus is moved slowly from the center to a distance of forty-five degrees. Plaintiff exhibited no onset of jerkiness in this test in either eye. The officer stated that these tests indicated that plaintiff had been "drinking".
The officer next requested that plaintiff perform the one-legged stand, but it was not conducted because plaintiff informed him he could not do that test "even if he was sober". The officer then instructed plaintiff to stand in a specified position while instructions were given for the heel-toe test. He was unable to maintain his balance and he was unsteady in the heel-toe test. The officer finally asked plaintiff to recite the alphabet from "C" to "N", *1223 which he did except that he pronounced "N" twice.
Based on the officer's testimony, we conclude that the officer had reasonable grounds to believe that plaintiff was driving while under the influence of alcohol. Thus, we find that the trial judge erred in applying the incorrect standard and in not finding that the officer had reasonable grounds to believe that plaintiff was driving while intoxicated.
The next issue is whether the administrative regulations were violated when the State failed to offer plaintiff the chemical intoxication test on the authorized intoximeter machine.
The evidence shows that the officer requested that the plaintiff take the test on an intoximeter manufactured by Federal Signal Corporation/CMI, Inc. At the time of this incident, the approved intoximeter was described:
B. Approval of Instrumentation.
The following is the instrument approved by The Louisiana Department of Public Safety and Corrections, the Office of State Police, Applied Technology Unit for analysis of breath specimens for the determination of the blood alcoholic contents therein:
1. Intoxilyzer 5000 manufactured and distributed by M.P.D., Inc., Owensboro, Kentucky.
The State, contending that the machines are the same, but that a change in corporate ownership changed the name of the manufacturer, argued that the Department of Public Safety and Corrections published an emergency re-promulgation of the approved machine reflecting the correct manufacturer. The re-promulgation was published in 1992, after this incident occurred. Because the actual machine was not changed, it asserts that the re-promulgation should have retroactive effect.
Plaintiff disagrees. He asserts that the trial judge correctly determined that the re-promulgated rule should not be accorded retroactive effect. Further, he contends that the State did not produce evidence of the re-promulgation and thus should be barred from arguing that the re-promulgation occurred.
Evidence of factual matters not officially and properly introduced into evidence at trial, may not be considered on appeal. See: Touzet v. Mobley, 612 So.2d 890 (La.App. 5th Cir.); Succession of Montegut, 430 So.2d 1024 (La.App. 5th Cir. 1982); Vol. 1, McCormick on Evidence, § 51 at 194 (4th Ed.1992). However, plaintiff bears the burden of proving an infirmity exists in the intoximeter offered to plaintiff for an analysis to determine the level of alcohol intoxication. Meyer v. State, Department of Public Safety and Corrections, License Control and Driver Improvement Division, 312 So.2d 289, 292 (La.1975); Hoffman v. La. Dept. of Public Safety and Corrections, 483 So.2d 1231, 1232 (La.App. 4th Cir.1986) writ denied, 486 So.2d 752 (La.1986).
In this case, the only evidence was the testimony of the police officer and a copy of the "intoxilyzer 5000 Operational Check List" which the officer was required to complete when he attempted to give plaintiff the test. That form describes the machine as "Federal Signal Corp./CMI, Inc. Intoxilyzer-Alcohol Analyzer; La. Model 5000". It gives the serial number and date of the attempted test, and notes the refusal by plaintiff to take the test.
The questioning of the police officer follows:
Q. Okay. You had previously testified concerning D-2. Excuse me. May I see D-2? Do you recall
A. Yes.
Q. your testimony from that? Okay.
A. Yes, sir.
Q. Can you identify the machine that was used in offering the test to Mr. Carmouche?
A. Yes. The serial number is on the printout card.
Q. Okay. Is that XX-XXXXXX?
A. Yes.
Q. Okay. And who manufactures that machine?
A. The Federal Signal Corporation. It's aFederal Signal Corporation and CMI.
Q. CMI.
*1224 A. One is a subsidiary of the other. I'm not sure which way it goes.
MR. PETTINGILL:
No further questions, Your Honor.
Both parties then rested and proceeded to closing arguments.
The plaintiff did not raise the issue in any manner, through testimony or documents, that this machine was not the machine approved by the departmental rules. It was not until closing argument that this claim was made. Until that fact was actually put at issue in trial by testimony or documentary evidence, the state was not required to disprove the alleged infirmity. Since plaintiff failed to put the fact at issue we must presume that the intoximeter used and offered to plaintiff was the approved machine.
Plaintiff also asserts that the trial judge correctly concluded that the re-promulgation was not retroactive. Since we have already found that plaintiff failed to carry his burden of proof that the intoximeter offered by the State was not the approved machine, we need not address this conclusion. However, even if it were proven that the names were not the same, we find the re-promulgation has retroactive effect because it was a procedural, clerical or non-substantive change. The machine was the same, only the name changed as a result of a stock buy-out, as stated in the Declaration of Emergency and re-promulgation of the rule effective July 1, 1992.[1] We note that the court may take judicial notice of the promologated rules under the authority of La.C.E.Art. 202. Thus, since this was not a change affecting substantive rights having only prospective application, we find that the trial judge erred in refusing to apply the statute retroactively. As a consequence of our finding herein, the judgment of the trial court, vacating the suspension of plaintiff's driver's license, is reversed and the judgment of the administrative hearing, suspending plaintiff's drivers license for 180 days pursuant to La.R.S. 32:667, is reinstated.
Accordingly, the judgment of the trial court is hereby reversed. The order of the administrative hearing, suspending the drivers license of plaintiff for 180 days, is hereby reinstated.
Costs of appeal to be paid by appellee.
REVERSED; JUDGMENT OF THE ADMINISTRATIVE HEARING REINSTATED.
NOTES
[1] DECLARATION OF EMERGENCY
 Department of Public Safety and Corrections
 Office of the State Police
 Breath and Blood Alcohol Analysis Methods
 (LAC 55:1.501)

The Department of Public Safety and Corrections, Office of State Police, has exercised the emergency provision of the Administrative Procedure Act, R.S. 49:953(B), to adopt the following emergency rule effective July 1, 1992.
The re-promulgation of the regulation regarding breath and blood alcohol analysis methods and techniques of July 20, 1991 referred to the manufacturer of the Intoxilyzer 5000, in § 501.B, as MPD, Inc., Owensboro, Kentucky, whereas it more precisely should have referred to the manufacturer as CMI, Inc., a subsidiary of MPD, Inc., Owensboro, Kentucky, MPD, Inc. having acquired the stock of CMI, Inc. from Federal Signal Corporation on October 9, 1988. The emergency regulation is needed to avoid any interruption in the use of the Intoxilyzers 5000, which are a vital part of Louisiana's highway safety efforts.
 Title 55PUBLIC SAFETY
 Part 1. State Police
Chapter 5. Breath and Blood Alcohol Analysis Methods and Techniques Subchapter A. Analysis of Breath § 501. Approval of Instruments to Conduct Blood Alcohol Analysis Breath Sampling
B. Approval of Instrumentation. The following is the instrument approved by the Louisiana Department of Public Safety and Corrections, the Office of State Police, Applied Technology Unit for analysis of breath specimens for the determination of the blood alcoholic content therein:
1. Intoxilyzer 5000, which was formerly manufactured by CMI, Inc. and distributed by Federal Signal Corporation, and since October 9, 1988 manufactured by CMI, Inc., a subsidiary of MPD, Inc. Every Intoxilyzer 5000 which has been certified and placed in operation in Louisiana is now and has been continuously, since the date of its original certification, an approved instrument for the analysis of breath specimens for the determination of blood alcoholic content regardless of any incorrect reference to its manufacture or distribution in the amendment of July 20, 1991.